UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LONNIE WASHINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-00206-JRS-KMB |
| | ) |
| FLUERY, | ) |
| AFFLOYAN, | ) |
| BLATON, | ) |
| | ) |
| Defendants. | ) |

**Order Granting Defendants' Motion for Summary Judgment**

Plaintiff Lonnie Washington, an inmate at Pendleton Correctional Institution, brought this action alleging defendants violated his Eighth Amendment rights when they failed to protect him against an attack from another inmate and then used excessive force on him. Defendants have moved for summary judgment. Dkt. [82]. For the reasons below, that motion is **granted**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

Plaintiff was an inmate incarcerated by the Indiana Department of Correction in G-Cellhouse ("GCH") at Pendleton Correctional Facility ("Pendleton"). Dkt. 83-1 at 29.

Defendants Richard Fleury ("Officer Fleury"), Olaniyi Afolayan ("Officer Afolayan"), and Kentessa Blanton ("Officer Blanton") were correctional officers at Pendleton working in GCH on January 4, 2022. Dkt. 83-2 at 1; dkt. 83-3 at 1; dkt. 83-4 at 1.

### B. Events of January 4, 2022

On January 4, 2022, officers Afolayan and Fleury were conducting showers on 4D range of GCH. Dkt. 83-2 at 1-2; dkt. 83-3 at 1. When conducting showers, officers take inmates out of

their cell, take them to the showers, and then return them to their cell when finished. Dkt. 83-2 at 2. Whenever they leave their cells, inmates in GCH are placed in handcuffs with a lead strap that connects to the handcuffs. *Id*. On January 4, Officer Fleury was training Officer Afolayan, who had just been transferred to GCH. *Id*. at 1. Mr. Washington believed that Officer Afolayan had only worked in GCH three times and testified that he would often confuse Mr. Washington with Alonzo Williams, who was another inmate on the same range. Dkt. 83-1 at 11, 23.

On January 4, Mr. Washington and Mr. Williams were the last two inmates in the shower. Dkt. 83-2 at 2. Officer Fleury believed they appeared to be joking with each other and that he did not observe any issues between them. *Id*. Officer Afolayan did not speak with Mr. Washington while he was in the shower. Dkt. 83-3 at 1. Officer Fleury did not recall speaking with Mr. Washington or Mr. Williams while they were in the shower. Dkt. 83-2 at 2. Mr. Washington testified that he and Mr. Williams argued frequently and that they were arguing in the showers. Dkt. 83-1 at 28-29, 37.

Officers Afolayan and Fleury escorted Mr. Williams back to his cell and, as they were walking down the range, Mr. Williams motioned that cell 18-4D was his and the officers placed him there. Dkt. 83-2 at 2; dkt. 83-5. Mr. Williams, however, was housed in a different cell, which Officer Fleury believes was two cells away and Mr. Washington believes was five cells away. Dkt. 83-1 at 23; dkt. 83-2 at 2. At the time, there was no system to identify which inmates were housed in which cell, and Officer Fleury had not memorized who lived where. Dkt. 83-2 at 2. As a result, he was unaware that he placed Mr. Williams in the wrong cell. *Id*. Mr. Washington did not see the officers transport Mr. Williams from the showers to his cell. Dkt. 83-1 at 47. Officer Blanton testified that she did not put Mr. Williams into Mr. Washington's cell, and she did not open or

3

close the cell door when he was placed there. Dkt. 83-4 at 1. Mr. Washington, however, testified that she operated the door panel when Mr. Williams was placed in his cell. Dkt. 83-1 at 60-61.

Several minutes later, when Mr. Washington indicated to Officers Fleury and Afolayan that he had finished showering, they took him back to his cell, 18-4D. Dkt. 83-2 at 2; dkt. 83-3 at 1. Although cell doors are typically left open while an inmate showers, Mr. Washington's cell door was closed, and the officers called down the range for the door to be opened. Dkt. 83-3 at 2. Mr. Washington thought there was "something awkward" about his cell because the door was closed and the lights were off. Dkt. 83-1 at 53. The front of the cell was partially covered by a curtain from "the top all the way to the bottom," and blocked him from seeing inside. *Id*. at 53, 64.

Officer Blanton was operating the door control panel, which is located on the opposite side of the range from the showers. Dkt. 83-4 at 1. Officers Fleury and Afolayan called down the range, Officer Blanton opened the cell door, Mr. Washington entered the cell, and the door closed behind him. Dkt. 83-2 at 2; dkt. 83-4 at 1. The officers stated that they were unaware that Mr. Williams was in the cell. Dkt. 83-2 at 3; dkt. 83-3 at 2; dkt. 83-4 at 2. Mr. Washington testified that, as he entered his cell, "an offender came out from under [his] bed and said, 'Yeah, I got your ass now.'" Dkt. 83-1 at 39. Mr. Washington indicated: "And that's all I remember . . . I must have got hit because I was unconscious the whole time." *Id*. Once Mr. Washington was in the cell, Officer Fleury felt a sharp pull on the lead strap and noticed that Mr. Williams was inside the cell, as well. Dkt. 83-2 at 3. Officer Afolayan saw Mr. Williams come out of hiding and punch Mr. Washington. Dkt. 83-3 at 2. Officer Fleury pulled out his OC spray canister and yelled to Mr. Williams to go to the back of the cell, which he immediately did. Dkt. 83-2 at 3. Officers Fleury and Afolayan called for the cell door to be opened, and they removed both inmates. *Id*.

Mr. Washington suffered a cut on his head, and officers called medical and escorted him to a shower or shakedown booth. Dkt. 83-3 at 2. Mr. Washington testified that, as Officers Fleury and Afolayan were moving him, "it's like they slammed the left side of my gate—slammed the left side of my face into the gate by forcing me to move over, forcing me to walk when I'm unconscious." Dkt. 83-1 at 57.

The officers' movement of Mr. Washington to and from his cell after the shower was captured on video. Dkt. 83-6. The video shows Officer Afolayan holding the lead strap with Plaintiff waiting in front of his cell to enter. Dkt. 83-6. Officer Blanton was at the end of the range. When Mr. Washington entered his cell, the lead strap immediately tightened. *Id*. Officers Fleury and Afolayan appeared to be startled and instantly noticed that Mr. Washington was not alone in his cell. *Id*. They immediately pulled on the lead strap and looked down the range towards Officer Blanton. *Id*. Officer Fleury removed his OC spray from its holster and the door opened. *Id*. The total amount of time from when Mr. Washington entered his cell to when it opened again was approximately twenty seconds. *Id*. Officers Fleury and Afolayan dragged Mr. Washington out of his cell, and he laid on the ground. *Id*. Two other officers approached the cell to assist and escorted Mr. Williams off the range. *Id*. Officers Afolayan and Fleury assisted Mr. Washington to his feet. *Id*. He appeared to stumble into the cage on the opposite side of the range but also appeared to be conscious and walking under his own power, if unsteady, the entire time. *Id*. Mr. Washington then continued walking off the range and out of the video frame. *Id*. Mr. Washington suffered a cut on his head, which the nurse told him looked like a stab wound, although Officer Fleury testified that Mr. Williams did not have a weapon. Dkt. 83-1 at 62-63; dkt. 83-2 at 3. Mr. Washington also suffered a cut behind his ear and a chipped tooth, which he testified were caused when his face hit the gate. Dkt. 83-1 at 62-63.

Following the incident, Officer Fleury spoke to his superior and now during shower time in GCH officers hang the inmate's ID on hooks that correspond to each cell to ensure inmates are returned to the proper cell. Dkt. 83-2 at 3.

## III.
## Discussion

### A. Failure to Protect Claims

Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). They incur liability for the breach of that duty when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). To succeed on a claim for failure to protect, Mr. Washington must show that (1) Defendants were aware of a substantial risk of serious injury to him, and (2) they acted with deliberate indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). An official will only be liable when he disregards that risk by failing to take reasonable measures to abate it. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). Further, damages are unavailable for fear of an unrealized attack. *Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996).

Mr. Washington has designated no evidence that would allow an inference that Officer Blanton was aware of a substantial risk of serious injury, and the undisputed evidence in the record shows that her only involvement in the events was to operate the door panel at the end of the range. Dkt. 83-1 at 60-61. Officer Blanton, therefore, is entitled to summary judgment.

Mr. Washington, however, testified that while he was in the shower, Mr. Williams baited him into an argument and said that he would have Officer Fleury put the two in the same cell and

6

"beat your ass." Dkt. 83-1 at 37, 39-41. Mr. Washington further testified that Officer Fleury then threatened him by saying "don't test me." *Id*.; dkt. 89 at 2; dkt. 90 at 2, 3. Defendants argue that Mr. Washington's affidavit and deposition testimony regarding Mr. Williams' shower statements is inadmissible hearsay and, therefore, cannot create a dispute of material facts. Dkt. 91- at 3.

Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Federal Rules of Evidence further provide, in relevant part, that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602.

"A party may not rely on inadmissible hearsay to avoid summary judgment." *MMG Fin. Corp. v. Midwest Amusements Parks, LLC*, 630 F.3d 651, 656 (7th Cir. 2011). Hearsay, which is defined as a declarant's out-of-court statement that a "party offers in evidence to prove the truth of the matter asserted in the statement," Fed. R. Evid. 801(c)(2), is not admissible unless allowed by statute, the Federal Rules of Evidence, or other rules created by the United States Supreme Court, *see* Fed. R. Evid. 802.

Here, it is not disputed that Mr. Washington is offering Mr. Williams' out-of-court statement to prove the truth of the matter asserted. Accordingly, Mr. Washington's testimony is not admissible unless an exception applies, which Mr. Washington has not argued. Fed. R. Evid. 801(c) and 802. That leaves Mr. Washington's testimony that Officer Fleury threatened him by saying, "Don't test me," which is admissible as the admission of a party-opponent. Fed. R. Evid. 801(d)(2). Alone and without context, however, this testimony is not sufficient to create a dispute

7

of material fact. Mr. Washington is the nonmoving party, so he receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). That said, he must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Id.* As the nonmovant, Mr. Washington enjoys the "benefit of reasonable inferences from the evidence, but not speculative inferences in his favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (cleaned up). Without more, Mr. Washington's testimony about Officer Fleury's vague threat is not enough to allow a reasonable inference that he intended to orchestrate an attack by another inmate. There is no other evidence in the record that the officers would have been aware of any substantial threat against Mr. Washington. Indeed, their startled reactions in the video belie such an awareness. Moreover, there is no dispute that, as soon as the officers realized Mr. Washington was being attacked, they responded as quickly as possible and removed him from danger. Dkt. 86. As a result, Officers Fleury and Afolayan are also entitled to summary judgment on Mr. Washington's failure to protect claims.

### B. Excessive Force Claims

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37−38 (2010) (per curiam) (cleaned up). Even if the force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the

>  extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

The summary judgment record contains video of the incident. Dkt. 83-6. "[W]here a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

The video shows Officer Afolayan holding the lead strap with Plaintiff waiting in front of his cell to enter. Dkt. 83-6. Officer Blanton was at the end of the range. When Mr. Washington entered his cell, the lead strap immediately tightened. *Id*. Officers Fleury and Afolayan appeared to be startled and instantly notice that Mr. Washington was not alone in his cell. *Id*. They immediately pulled on the lead strap and looked down the range towards Officer Blanton. *Id*. Officer Fleury removed his OC spray from its holster and the door opened. *Id*. The total of time from when Mr. Washington entered his cell to when it opened again was approximately twenty seconds. *Id*. Officers Fleury and Afolayan dragged Mr. Washington out of his cell, and he lay on the ground. *Id*. Two other officers approached the cell to assist and escorted Mr. Williams off the range. *Id*. Officers Afolayan and Fleury assisted Mr. Washington to his feet. *Id*. He appeared to stumble into the cage on the opposite side of the range but also appeared to be conscious and

walking under his own power, if unsteady, the entire time. *Id*. Mr. Washington then continued walking off the range and out of the video frame. *Id*.

No jury could reasonably infer from the video evidence that defendants used excessive force against Mr. Washington. *McCottrell*, 933 F.3d at 661 n.9. Accordingly, defendants are entitled to summary judgment on Mr. Washington's excessive force claims.

## IV.
## Conclusion

Defendants' motion for summary judgment is **granted**. Dkt. [82]. Final judgment will issue in a separate entry.

**IT IS SO ORDERED.**

Date: 9/2/2025

_____
JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

LONNIE WASHINGTON
978703
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

Elijah B. Mollet
Lewis And Wilkins LLP
emollet@lewisandwilkins.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com